**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROZALIYA RIPA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CAMPBELL'S COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rozaliya Ripa ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant The Campbell's Company ("Defendant" or "Campbell's"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and sells Cape Cod Kettle Cooked Potato Chips in all of its various varieties (the "Products") throughout the United States, including in New York.

2. Defendant represents to consumers through its packaging that the Products contain "No Artificial Colors, Flavors or Preservatives" (the "Representations"). Defendant makes these claims in order to capitalize on consumers' preference for natural foods that do not contain synthetic ingredients.

3. Unbeknownst to consumers, however, Defendant's claims are false because the Products contain synthetic citric acid.

4. Plaintiff has purchased the Products. Now, on behalf of herself and all others

similarly situated, she asserts claims for violations of New York General Business Law §§ 349 and 350, and for breach of express warranty.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff Rozaliya Ripa is a citizen of New York who resides in Brooklyn, New York. Ms. Ripa has purchased the Products for herself numerous times during the applicable statute of limitations. For example, in or around August 2025, she purchased Sea Salt & Vinegar Cape Cod Kettle Cooked Potato Chips from a Stop & Shop in Brooklyn, New York for approximately $3.99. In purchasing the Products, Ms. Ripa relied on Defendant's false, misleading, and deceptive marketing of the Products as containing "No Artificial Colors, Flavors or Preservatives." Had Ms. Williams known that Defendant's representations were false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

9. Defendant The Campbell's Company is corporation organized under the laws of New Jersey with its principal place of business located in Camden, New Jersey. Defendant

formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

10. Defendant's labeling on the Products states that they contain "No Artificial Colors, Flavors or Preservatives":




11. Defendant's labeling puts forth a straightforward, material message: the Products contain only coloring, flavoring and preservative ingredients that are natural and not synthetic.

12. Defendant makes these natural claims in an effort to capitalize on the growing market for natural products. Health-conscious consumers are willing to pay a price premium for products labeled and advertised as natural because they believe that such products are safer and/or healthier to consume.

13. But, unfortunately for consumers, the Products contain an ingredient that is not natural: synthetic citric acid.

14. Citric acid is a synthetic ingredient used to add flavor and as a preservative in foods. The USDA Agricultural Marketing Service has noted that natural citric acid is "no longer commercially available" because its use is not economically feasible. Instead, only synthetic citric acid is used in packaged foods, including the Products.

15. Synthetic citric acid is a major industrial chemical, produced at more than two million tons per year worldwide. In industry and domestic applications, synthetic citric acid is a chelating and buffering agent used in many cleaning products and as a starting material for synthesizing citrate esters, itaconic acid, acetonedicarboxylic acid and other compounds.

16. The manufacturing process for synthetic citric acid, like the kind found in the Products, utilizes synthetic industrial chemicals to render the ingredient from mold (*Aspergillus niger*), including n- octyl alcohol, isoparaffinic petroleum hydrocarbons, calcium hydroxide and sulfuric acid. 21 C.F.R. § 173.280(a) (describing the "[s]olvent extraction process for citric acid"). While "[r]esidues of n- octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are removed," some chemical residues remain. 21 C.F.R § 173.280(d) ("Current good manufacturing practice results in residues not exceeding 16 parts per million (ppm) n- octyl alcohol and 0.47 ppm synthetic isoparaffinic petroleum hydrocarbons in citric acid."). These trace synthetic chemicals remain in synthetic citric acid and, as a result, end up in finished foods, including the Products that Plaintiff purchased.

17. In light of these facts, the FDA has determined that citric acid is synthetic and not natural. For instance, in an August 16, 2001 Warning Letter sent to Oak Tree Farm Dairy, Inc., the FDA wrote that the label for "OAKTREE ALL NATURAL LEMONADE" was

"inappropriate" because "natural" means "nothing artificial or synthetic" and the product contained citric acid. Likewise, in an August 29, 2001 Warning Letter to the Hirzel Canning Company, the FDA wrote that chopped tomatoes should not be labeled "ALL NATURAL" because they contained citric acid.

18. Consumption of synthetic citric acid has been associated with adverse health effects including inflammation related to asthma, juvenile idiopathic arthritis, autistic spectrum disorder and fibromyalgia.

19. Defendant has profited enormously from its false and misleading representations. The purpose of this action is to require Defendant to change its labeling claims and to provide consumers with monetary relief for its deceptive and misleading product claims.

## CLASS ACTION ALLEGATIONS

20. Plaintiff seeks to represent a class defined as all persons in the United States who, during the maximum period of time permitted by law, purchased the Products for personal, family, or household consumption, and not for resale (the "Nationwide Class").

21. Plaintiff also seeks to represent a subclass defined as all person in New York who purchased the Products (the "New York Subclass") (collectively with the Nationwide Class, the "Classes").

22. **Numerosity Fed. R. Civ. P. 23(a)(1).** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

23. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).** There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

(a) the true nature and presence of synthetic ingredients in the Products;

(b) whether Defendant's marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading;

(c) whether Plaintiff and members of the Classes have suffered damages as a result of Defendant's actions, and the amount thereof;

(d) whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Classes; and

(e) whether Plaintiff and members of the Classes are entitled to attorneys' fees and costs.

24. **Typicality (Fed. R. Civ. P. 23(a)(3)).** The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

25. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

26. **Superiority (Fed. R. Civ. P. 23(b)(3)).** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Even if every member of the Classes could afford to pursue individual litigation, the court system could

not. Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. In contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION
## COUNT I

**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

27. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

28. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

29. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

30. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

31. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

32. Defendant made false and misleading statements by marketing the Products as containing "No Artificial Colors, Flavors or Preservatives" when the Products in fact contain synthetic citric acid.

33. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

34. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

35. Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

36. Defendant's actions set forth above occurred in the conduct of trade or commerce.

37. The foregoing deceptive acts and practices were directed at consumers.

38. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because they fundamentally misrepresent the production and quality of the Products.

39. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as

actually sold.

40. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

41. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

42. Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

43. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

44. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as containing "No Artificial Colors, Flavors or Preservatives" when the Products in fact contain synthetic citric acid.

45. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

46. This misrepresentation has resulted in consumer injury or harm to the public interest.

47. As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Product had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and

omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

48. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III

### Breach of Express Warranty
### (On behalf of the Nationwide Class and the New York Subclass)

49. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

51. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products as containing "No Artificial Colors, Flavors or Preservatives."

52. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

53. However, the Products do not conform to Defendant's representations and warranties because the Products contain synthetic citric acid. By falsely representing the Products in this way, Defendant breached express warranties.

54. As a direct and proximate cause of Defendant's breach of express warranty,

Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial. Had Plaintiff and members of the Classes known the Products in fact contained a synthetic ingredient, they would not have purchased the Products, or only would have been willing to pay substantially less for them.

55. Prior to filing the initial complaint in this action, Defendant were served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Nationwide Class and the New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and New York Subclass;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For an order finding in favor of Plaintiff, the Nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: October 23, 2025

**ARISOHN LLC**

By: */s/ Joshua D. Arisohn*
Joshua D. Arisohn

Joshua D. Arisohn
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

*Attorney for Plaintiff*